May it please the Court, my name is Kathleen Kahn and I represent Petitioner Joe Leslie Desire. I intend to reserve two minutes for rebuttal. Okay. The Court has asked the parties to address whether Desire satisfied the custody requirement for habeas jurisdiction. The District Court correctly found that Desire met this requirement. The concept of in-custody extends beyond just physical detention. Nothing short of an unconditional release will prevent habeas jurisdiction. Custody is broadly construed to include restriction from entry into the United States and restraints on liberty that are not shared by the public generally. Desire was removed to Haiti in May 2006, but the Ninth Circuit subsequently vacated his removal order in 2007. The government then commenced removal proceedings against him and also prevented him from reentering the States after several attempts. He's not in physical detention currently only because the Attorney General cannot reach him in Haiti. But as soon as he arrives in the United States, the Attorney General must take him into custody. How do you get out from under our Miranda v. Reno case? The government discusses the case. Your briefs do not. Yes. Well, this case is different from Miranda. There the Court found that an alien who was no longer in government custody and had been removed to Mexico did not satisfy the custody requirement. The removal proceedings had been terminated, and the individual was essentially at liberty in Mexico but could not return to the United States. Desire is not residing out of the country due to valid removal order. He's permitted to reenter the United States, but as soon as he arrives the Attorney General has to take him into custody because he has been subject to removal proceedings again. So he's still in ongoing removal proceedings. This case is actually more similar to Hensley v. Municipal Court, where the Supreme Court held that a convict released on his own recognizance satisfied habeas' custody requirement. The reason I'm wanting to make sure we deal with Miranda is that Miranda responds to a kind of a commonsensical notion that once someone is deported, or in the modern terminology, removed, and now seeks to challenge that for the first time after having been removed, challenged beforehand, as I understand it, continuing, there's a huge universe of people who could bring habeas petitions. I'm not sure that our decision on Miranda is actually correct, given the Supreme Court case law. The Supreme Court has never really addressed this. But I understand the concerns that led us to our decision on Miranda. Is the key factor here that he's not challenging a prior removal order but challenging an ongoing removal proceeding? Yes. We believe that the key distinction is that he is currently in removal proceedings. So in the typical scenarios that Miranda is in, there was a termination of the removal proceedings. The individual has been deported back and is no longer subject to any ongoing proceedings. But in this case, Desiree is in ongoing removal proceedings. We believe he should not be, because res judicata should apply. But the fact remains that if he were to attempt to reenter the country, the government has indicated that, and the statutes require that the attorney general would take him into custody and he would be put back into Eloy Detention Center, where he has previously been locked up for seven years. Okay. Counsel, Judge Gould, if I could ask you a question on this custody issue. You know, I would understand if he came back and, as you say, the attorney general immediately put him in custody, he could then litigate the res judicata issue. Or any other issue challenging that custody. But why should the, what bothers me is why should the, all the power of the United States courts be invoked in a case where the guy is not in custody and he's in the foreign country and he has not come back? Well, he meets the traditional concept of in custody, even though he is currently not physically detained. He's subject to a restraint on his liberty were he to reenter the United States. So while the government's – Wait, wait, wait. One second on that, please. You're saying he's subject to a restraint. But the restraint would come after he came back. Yes, as soon as – He would come back and then they would incarcerate him. Right. So is there any case, any case that says in that circumstance that the person should be viewed as in custody? I'm not – I share the concern that I thought might be underlying Judge Fletcher's question, that, you know, there could be tens of thousands of deported people who could come up with some theory or another to raise in our courts when they're not here. Well, I think that Desiree's circumstances are sufficiently unique and extreme to justify habeas relief because of the res judicata concerns and the fact that there is this impropriety in bringing essentially a second deportation proceeding against him where there was already a final decision on the merits vacating his removal order. This is a unique situation. In most situations, there will be a final order terminating removal proceedings and the alien will be removed back to his or her home country and won't have grounds to say that the removal proceedings are ongoing because they've been terminated. Here there is sufficiently unique and severe circumstances that the Court not only has the jurisdiction to consider the habeas petition, but also, you know, should actually consider the petition on the merits. Help us understand, if you can, what happened in the Immigration Court after the so-called reopening and remanding. I'm adopting the BIA's terminology, even though, of course, that's essentially what's being challenged. My understanding is that that IJ proceeding has been suspended. I think the term may be administratively closed. Is that at the motion of the government? Did Mr. Desiree object to its being held in abeyance? I mean, what happened? Sure. Well, as the Court indicated, after the Ninth Circuit order in August 2007 vacating the removal order, the government moved to remand the proceedings, and that was in December 2007. That was treated by the Immigration Court as a motion or, excuse me, the BIA as a motion to reopen the proceedings. The proceedings were reopened. That was opposed by Desiree on the grounds that res judicata prevented the government from doing so. And meanwhile, so the Court understands, Desiree is in Haiti this entire time, so he has never been back in the country since 2006. These are all going on while he has not been here. But he is under this essentially unexecuted order of detention, where if he comes back into the country, he'll be locked up in Eloy. And then in 2009, the government moved unopposed to administratively close the proceedings. So that's basically just a procedural tool. It's a mechanism for the BIA or the Immigration Court to hold the case on the calendar, not the active calendar, but it doesn't terminate the proceedings. So that's currently where we are in terms of the immigration, the BIA proceedings. I've not seen the government's papers in this administrative proceeding in front of the IJ. Maybe you have. Did the government move for this sort of administrative closure? I guess in a practical sense, it's just held with an abeyance. Did the government move for that administrative closure or suspension based on the pendency of the habeas petition? I mean, why is the government stopping that proceeding? I believe that the reason for that is that Desiree is not in the country and these habeas proceedings are ongoing. The habeas petition has been ongoing since I want to say 2008, right after, pretty soon after the order vacating the removal. Do we have in the papers available to us the government's moving papers in front of the IJ as to seeking, when they sought administrative closure? Yes, I believe the government can correct me if I'm wrong, but I believe those are in the government's record excerpts. Okay. If the Court has no further custody requirements, I'll move on to the merits of the res judicata argument. So the Ninth Circuit has held that res judicata bars ICE from initiating a second deportation proceeding based on a charge it could have brought in the first case after a change in law. This is what happens here. The only difference between Brava, Pedroza, and Desiree's case is that ICE tried to essentially circumvent this holding by filing a motion to remand instead of issuing a new notice to appear. And so doing ICE violated its own governing regulations. It disregarded the final order vacating removal and misrepresented that the Ninth Circuit had remanded the proceedings to the VIA when, in fact, the proceedings were terminated once the 2007 order was issued. So the government wants to minimize the import of Brava, Pedroza, and Ramon, Sepulveda by stating that neither case is precisely on point. Maybe not, but these cases, when combined with Al Mutareb, clearly demonstrate that a judgment vacating a removal order such as the August 2007 Ninth Circuit order does end a first case such that res judicata applies. ICE's failure to move to reopen the proceedings before this final order prevents it from relitigating charges it could have brought in the first place. So there's really no dispute that the charges that were brought in the essentially second proceeding, even though it's relabeled as a motion to remand, motion to reopen, it has the same effect as instituting a second notice to appear that's based on charges that could have been previously brought. But essentially, ICE was given the opportunity or would be given the opportunity if these proceedings go forward to continue to try to remove Desiree based on removal theories that were available to it in the first place. Kagan. Counsel, I'm a little concerned that I'm not understanding correctly about this one procedural juncture in the, in this case, and that is your statement, and I think it's in the briefing. I read a couple of times what you just said, which is that there was a misrepresentation that the, to the immigration court, that the Ninth Circuit had remanded. Did they use that word, remand? They did, yes. In the briefing below, they indicate, the government indicated that Desiree was in remanded removal proceedings. Do we have that document in the ERs in front of us? We do. Where do I see that? That site, please. Sure. Once I take a look at my documents after, while the government is speaking, I'd be happy to provide that site to you. I don't know it off the top of my head. Okay. But it's pretty clear that it wasn't a new removal proceeding, right? There was a, because they treated it as a motion to, by the time they got there, they treated it as a motion to reopen the original proceeding? That's correct. That is how the BIA treated it. How did the IJ treat it? The same. It was treated as a motion to reopen. But. What did they file that had to be characterized as a motion to reopen? I believe it was a motion to remand. To remand the removal proceedings such that they would have the opportunity to bring an additional removability theory against Desiree. Because once the Ninth Circuit order issued, they no longer had a basis to find him removable because he was not removable for having been convicted of an aggravated felony. Right. And that's your race to, basically the premise of your race to deposit. Exactly. But my question is, what's the vehicle? And maybe when you get back to your table, my question is going to be, what's the vehicle they used to present what you're calling a second bite at the apple? So if you could, when you come back, if you could tell me that. Well, they did try to use statutes that would allow them to bring subsequent or additional charges. Because during a removal proceeding. My question, I don't. Your time is so limited, just so I'm really clear about my question. I just want to know what they called it. And when you come back, if you could just give me the excerpt sites, that will do it for me. Thank you. Sure. But I understand your theory. Thank you. So preventing the government from bringing successive deportation proceedings, it's consistent with the structure, the purpose of the INA. ICE bears the burden of proving by clear and convincing evidence that an individual is subject to deportation. And the burden would be meaningless if ICE could do what it essentially has done here, simply move to reopen an immigration proceeding after a removal order had been vacated and continue to essentially try its luck with different removal theories. Well, I think the law is very clear, coming out of Bravo-Pedroza, that if an immigration tries in front of an IJ to commence a new proceeding on a different theory, they can't do it. So assuming we have habeas jurisdiction, which remains, of course, up in the air. But assuming we have jurisdiction and assuming that we treat the second proceeding in front of the IJ as a new proceeding, game's over. So the real question is, if we have jurisdiction, the real question is whether or not the IA is permitted to treat this as a continuation of the earlier proceeding. Right. That is the crucial issue in this case. Desiree views the proceedings as a second deportation proceeding. And it's very clear under Bravo-Pedroza that the government is not permitted to bring successive deportation proceedings, even after a change of law. We fully acknowledge that a change of law happened here and that the government is not expected to be able to necessarily predict that change of law, but Bravo-Pedroza squarely holds that ICE has the burden of bringing, by clear and convincing evidence, the basis for its removability. And so what I think happened is that the government had two possible grounds for removal. It charged under one, did not charge under the other, even though it was available  And in the end, after our decision on Taylor, on the categorical approach, the approach that they had, the charge they had brought, just doesn't work. And so now they want to go back and bring the other charge that they had available to them, but that they didn't bring first time around. But they wish they had. Exactly. And that's it, right? Right. And that's what happened here. They, the government alleged that Desiree was removable for committing an aggravated felony, but now they're trying to say that it was a controlled substance-based charge. That conviction didn't change. The circumstances have not changed since 1999 in any way. So what the court needs to look at is whether or not the government had the authority to be able to essentially just relabel something, relabel a proceeding as a motion to find that Desiree was removable for the same conviction under the same circumstances and there were absolutely no new facts. So if the court has no further questions, I'll reserve the remainder of my time. Okay. Thank you. Good morning, Your Honors. I was, I'm sort of struggling to get the documents together over there. This case has a huge procedural history. May it please the Court. And your name for the record? Christopher Hollis for the United States Government, Your Honor. As far as the citation to the record for the administrative closure, I'll just, I'll clear these up at the start if you like. Yeah, yeah. It's the supplemental excerpt, and that's page 14 for administrative closure. Page 14? Yes. And? Well, that's the closure. What I want is the papers that you filed asking for the closure. Okay. I want to know the ground, the reason you gave for seeking the closure. Your Honor, the basis for the administrative closure is not in black and white, in the supplemental. Okay. That was what I was asking for. And it's not here. Correct, Your Honor. Is it in the record of the case, but just not in the ER? It's not in the ER. No, I understand that. Is it in the record of the case? Is it in the admin record? Is it in the record of the case in front of the district judge? That's the record we're looking at. Your Honor, no, not that I know of, Your Honor. There was also a reference to the motion to remand and whether that is in the record. That's at the excerpts of record, not the SER, but the ER at 96. And the VIA's order reopening and interpreting the motion to reopening as a motion to remand is at ER 105. Yeah. So the first sentence of that motion by the Department is, or the first two sentences, I think, are self-contradictory. The first one, I'm just on ER 96. On August 15, 2007, Ninth Circuit vacated the removal order entered by the immigration court, the mandate issued, and the case is now on remand. Well, no, they vacated the mandate issued. They didn't remand. And the board understood, but the government apparently did not. The government understood it had not been remanded. So instead of granting the motion to remand, they treat it as a motion to reopen. Counsel, I guess that is my question, and I haven't been subtle about it. Do you want to respond to my concern, opposing counsel's characterization that the case was misrepresented as having been remanded? It's my understanding, Your Honor, that ICE filed a motion to reopen, and it was treated by the VA as a motion to remand. No, they filed a motion to remand, and it was treated as a motion to reopen. Right. That's my understanding, counsel. Hence the characterization of the government's position as having misrepresented the case as having been remanded by the Ninth Circuit. Thank you for that clarification, Your Honor. At any rate, it would be within the VA's discretion to reopen. Yes. I wanted to know if the government wants to respond, because I take it pretty seriously. If the government has represented that the Ninth Circuit remanded something we didn't remand. And I'm not trying to put you on the spot, but I guess I am putting you on the spot. Your Honor, I'm certain that it was not the intent of ICE to misrepresent. The order itself was in the record, and it's before your honors. Fair enough. Thank you. Well, the average they made a mistake. Whether they made a mistake with any evil intent, that's quite another question. I acknowledge, Your Honor. If I could address the custody issue, Your Honor. Some questions came up in the course. By the way, I would like to reserve three minutes for rebuttal. No, no, no. You're responding. Thank you, Your Honor. This is your shot. Okay. The – if we could take a step back from the actual custody itself, I'd like to point out for the Court that there's no properly named respondent here, and this is tied to custody. And more specifically, the Attorney General is named here as the respondent. But the Attorney General is not amenable to any service of process in Haiti. There's no custodian that's able to facilitate whatever sort of relief the Court might seek. This is a new argument as far as I'm concerned. Your Honor, it's tied to the issue of custody. Well, I understand the custody argument, but I didn't see any argument in your papers that we don't have a proper respondent. That's not in there, Your Honor, but this is a jurisdictional argument, so the government is raising it now. Okay. Going to the – going to the custody argument, Your Honor, there's – the facts in this case, starting from the issuance of the removal order in 2000 and Mr. Desiree's removal in 2006 and his filing of his habeas petition in 2008, that sequence of events alone shows us under Miranda that Mr. Desiree was not in custody. He filed his habeas petition after removal. And as one of Your Honors pointed out earlier, under Miranda, the habeas petition would need to be filed before removal. Well, that's – if it had been filed before removal, that's easy. I understand that. But it doesn't necessarily have to be, which is where we – why we're – why we're disputing it now. Your Honor, based on immigration – immigration-specific habeas case law, in order for a habeas petition to be – to go forward if the Petitioner was not in custody in the United States, there would have to be shown some sort of extreme circumstances. And this is not something that – that came up with appellants. Yes. Whether we call it extreme or not, I'm not quite yet prepared to say. I will certainly say it's unusual. I've never seen a case like this. I mean, the ordinary case that I see is that there's a removal order. It's executed. The person subject to removal is very unhappy with it, challenges it. And if they're already out of the country having been removed and they challenge it by habeas, they can't do it. This is not that case. I agree, Your Honor. This case is – has somewhat of a – definitely has a long history and somewhat convoluted history. So why isn't that an extreme circumstance? Again, I'm not casting aspersions. It's just – it's just the way the cards fell in this – in this chronological sequence. Why isn't that an extreme circumstance? That he was removed? Well, no, counsel. That he was removed and then the Ninth Circuit ruled there was a change in the law and the Ninth Circuit, the earlier three-judge panel, ruled the way it ruled. And so he had already been deported. He had already been removed by the time he recognized that the basis for that removal order basically evaporated. That's not an extreme circumstance because he is entitled to come back and challenge his – his removal proceedings now under this new charge. Oh, so you're inviting him to come back and be incarcerated. Upon – if he returns, he will be paroled in. There will be a parole document issued, which didn't happen the first time around. Logistically, things did – I think the timing of things did not work out and he was unable to – he was unable to provide a travel itinerary in order to get that parole document. If that happens this time, he will be paroled in, he'll be detained, and I.J. will make a determination as to whether he should be detained under 236C. So let me get this straight. He either has to stay in Haiti because of a removal order that he thinks is invalid or he has to come back and be incarcerated because of a removal order he thinks is invalid. Is that what's going on? Yes, Your Honor, if he wants to contest that removal order. Why isn't that custody? There's no significant liberty restraint on – on Mr. Desiree right now. He's – he's in no different – Well, the ordinary rule outside of immigration is that if you are prevented from coming into the United States by a judicial order, that is sufficient restraint. Your Honor, if you're referring to Jones in the note there with the four cases cited, if I could address those. There are a lot of cases. And Miranda changes that rule with respect to a certain category of immigration and deportation cases. Well, Your Honor, I'm not sure there are any cases, unless extreme circumstances are shown, that would allow a habeas Petitioner to – that would allow habeas jurisdiction to seek entry into the United States. If we take a look at these cases that Jones cited – Well, to seek entry is different from to challenge exclusion from. There are quite a few cases outside the immigration context, or the recent immigration context, where habeas is available to challenge exclusion from. To seek admission simpliciter, no. But to challenge exclusion from, yes. Respectfully, Your Honor, I'm – I'm happy to discuss those cases. I'm not sure to what cases you refer. Let me ask a question, see if I can clarify to understand Judge Fletcher's question. My understanding here is that the – and I'd like counsel to correct me if I'm wrong, but it's that – that the – the appellant is not being excluded. You know, he can come back and enter the country. He's not excluded at the border. He can enter the country. He would then be put in custody, and he could then litigate this issue. There's no bar at the door. Am I wrong in that? That's correct, Your Honor. And as – as before, the case still remains. ICE's – Immigration and Customs Enforcement is willing to coordinate issuance of a parole document with Citizenship and Immigration Services in Haiti to allow Mr. Desiree to be paroled in and to challenge this added charge of removability based on his control of the Customs Enforcement. We sort of have a nice question about what's in custody for purpose of 2241. That is, is a person in custody if they're outside the country and not physically in custody, can enter the country, but upon entry they will then be put in custody, physically at that point. That – can a person in those circumstances invoke the habeas jurisdiction in our – in our court? Thank you for raising that issue, Your Honor. And if we take a look at the exact language of Section 2241, the habeas statute, we can see that it's written in the present tense. A person – a prisoner is in custody. First of all, the government contends that this person is not a prisoner. He's not restrained. And second of all, the government argues that because the habeas statute is written in the present tense and says is, that is, C1 through 3, is this, is that Mr. Desiree is not currently in custody. There's no present tense applicable to Mr. Desiree. Now, it will be upon his if he does return to the United States. You know, I understand that all the technicalities are somewhat tricky here, but somehow this just doesn't sit right. You're – you will allow him to bring this challenge to an order that I think he has pretty good grounds to think is invalid. I'm not yet to the merits on that one. But the only way you're going to let them – let him do it is to come back to the Federal Detention Center and be incarcerated for however long this proceeding takes place without the possibility of bail, as I understand it. So here, you – come on back. Be the guest of the Federal Government in Ely, Arizona, where you already were a guest for 7 years as a condition for litigating this. That just doesn't seem fair to me. Your Honor, respectfully, he will have the opportunity to seek a bond hearing before the immigration judge. The immigration judge will determine whether Mr. Desiree is detainable under Section 236C or whether he is – whether a bond is available to him under Section 236A. Was it available to him before, when he was there for 7 years? Was a bond determination? Yes. A review of his – of his – I'm trying to figure out the practical likelihood of his getting out on bond when he was there for 7 years earlier. Was he – would bond have been available to him during those 7 years of incarceration? He's entitled to custody reviews while he – while he is detained, yes, Your Honor.  Your Honor, you have – you have to understand that this person has filed – Mr. Desiree has filed three petitions for review, and this is his fourth habeas petition. There is a long line of – of filings by Mr. Desiree that could be interpreted as prolonging his detention as he is appealing the lawfulness of his – of his removal. Yeah, but what I'm trying to get at is your immediate – is the immediate question, because you're suggesting, well, if he comes back and is incarcerated in order to allow his habeas to go forward, there's at least a serious enough likelihood that you're willing to mention it, that he'll be let out on bond. And I'm trying to figure out how – how likely that really is. Your Honor, I can't speak to the IJ's determination, but he is entitled to a bond hearing. How long would he have to wait to get the bond hearing? I would say that it would come within 30 days. I don't want to represent – I will – I don't want to represent something shorter than it would be. All right. I have a question about the verb you're using, that he could decide to come back and challenge this, and you said that he – that arrangements would be made to parole him back into the country. So I have questions about what status he would have when he comes back in. It sounds like it would be straight up there would be notice he's not sneaking back in. It's not an unlawful reentry, right? Correct, Your Honor. So he would be essentially showing up, having given notice that he's coming back, and he would be surrendering himself, essentially. That's correct, Your Honor. But there's nothing unlawful about that reentry at that point, even though there's currently a removal order. Correct, because the parole will have been arranged. Okay. And so what's that mean? What's parole mean? He's allowed to come in despite his indisability status, despite pending removal. It's a – it's a – okay. So it's a hall pass. It's a hall pass for entry. Thank you. And he would be incarcerated subject, I guess, to a bond hearing in the ordinary way that he was before, that is to say, he's subject to a removal proceeding and you're – he's incarcerated in the meantime because, according to the government, he's got a sufficiently serious criminal charge against him as the basis for removal. Yes, Your Honor. The government would move forward on this added removability charge. Basically, it really is a do-over of the prior proceeding, but just on a different charge of removability. No longer is there going to be aggravated felony. It's now going to be controlled substance. Your Honor, the government argues that the proceedings were never terminated here, and this is one basis that we distinguish. I understand that. But I'm trying to figure out what's going on. You are getting a do-over. Whether you're getting a do-over as part of a continuing proceeding or whether you're getting a do-over as part of a new proceeding is a separate question, of course. But I'm just trying to figure out how I'm supposed to look at the situation he is now in. Either stay in Haiti or come back and be incarcerated during the proceeding that the government itself has decided it doesn't want to allow him to go forward, because that one's been held in abeyance for a long time. If you'd been willing to go forward with that, maybe we'd be done by now. Had been willing to go forward with this new – With the IJ. With the added removability charge. With the IJ hearing as to which you sought administrative closure. Your Honor, I spoke with ICE counsel about this. And why didn't you place this person in absentia removal proceedings? That was a question I put to ICE. Well, you did. That's what's going on in front of the IJ right now, but then you put it in abeyance. No, Your Honor. There's no – there have been no hearings in front of the IJ. There's no in-absentia hearings going on. I understand there are no hearings. But what happened in front of the IJ, as I understand it, is after you make the motion in front of the BIA to remand after our decision, and the BIA says, no, this can't be a motion to remand because there was no remand, we'll treat it as a motion to reopen. They send – then granting the motion to reopen, the BIA sends it back down to the IJ to proceed, and the government says, hold the phone, we don't want to go forward at this time. The government has said, hold the phone, we don't want to go forward at this time because there's no remove order in place right here. It's been vacated. Now, that's one of my problems. You say because. I'd love to see the papers that the government filed as to the because, but I don't have them. Your Honor, I – you might and I might be overlooking them right now. I can look through the supplemental excerpts of record for that. Well, I looked and I didn't find them. Now, I don't have the full record. All I have is the excerpts. I can look for that and apprise the Court of that when my time is finished, Your Honor. Now, let's assume for the moment, just because there are several issues here, let's assume that he's in custody. I'm not asking you to concede. I mean, that's a very serious question, whether he's in custody for purposes of habeas. Let's assume that he is so that we can get to the question whether or not this is a new proceeding, whether the BIA was allowed to, quote, reopen a proceeding after our decision vacating the order of removal. Well, Your Honor, that decision vacating the order of removal did not terminate proceedings. There's no language in that order going to anything other than, hey, government, you can't move forward on this aggravated felony-based removability charge. That was the end of the Ninth Circuit's pronouncement on that. And, in fact, that could be the lack of a pronouncement on that. Well, I'm just reading from our order, the sort of the operative line at the end that says, Petition granted, order of removal vacated. Okay. It's gone. Yes, Your Honor. Okay. End of proceeding. No remand, no nothing. It's gone. But proceedings were not terminated here, Your Honor. They have remained ongoing. Well, how could they after the order of removal has been vacated by us? That's where you're losing me as well. Your Honor, if we could take a look at – if we could take a look at Bravo-Pedroza, the case that Appellant cites himself. Bravo-Pedroza even suggests the method that was used here, and that is reopening. Well, if a reopening is available to you. Yes, Your Honor. Yes. So if a reopening is available, I agree. The question is, is reopening available? But, Your Honor, there's no authority out there that precludes ICE from doing what it's done. And the district – What basis can – on what basis or what bases can reopening be sought? On new facts and new evidence. And there was – And what new facts do we have? Yes, Your Honor. In the – in ICE's motion to remand, they listed at least one new evidence, one item they consider new evidence, and that was putting forth the transcript of proceedings in order to show that Mr. Desiree's controlled substance conviction was for sale and not for personal use. But those facts were available first time around. It has to be new and evidence that couldn't have been available first time around. That would be the evidence that I would argue was new, Your Honor. And I understand your position on that. Is there any other basis for reopening? There were new facts, Your Honor, and that would have been the change in law. And what – but change in law is not change in fact. I mean, new facts is not the same thing as a change in law. Your Honor, the government's position is that there was new evidence and new – at least new evidence that it had not brought forward as far as – So let me make sure I understand the new evidence, then. The new evidence that you're trying to characterize and convince us is new evidence is, number one, now more documents from the State proceeding, and, number two, a change in law. That's it. Is there anything else? No, it's – no, that would be the transcript, Your Honor, mainly the transcript. I – I – From the underlying drug conviction? Yes, Your Honor, to show that – Thank you. Okay. Okay. So that's it in terms of new facts for the motion to reopen? Yes, Your Honor. And the proper premise for a motion to reopen has to be new facts? That's your – you agree with that? New facts and new evidence pursuant to the regulations, yes, Your Honor. And if you don't have new facts and new evidence, you can't get a motion to reopen? I – that's the way I understand it. I would have to take a look at the regulations to see if there are any other – That's the way I understand it, too. I just want to make sure that we are understanding it in the same way. I would have to take another look to see if there are other bases. But as far as I know, new facts and new evidence are the same. Well, you've certainly made no other argument in your briefs. I mean, that's the argument of the briefs is that this constitutes new facts. Yes, Your Honor. Yeah. Okay. You do say in your briefs, by the way, that there was a change in California law. There was no change in California law. There was a change in Federal law. Federal law. Yeah. That was my mistake, Your Honor. Yeah. Okay. If there are any other questions, then I'd like to sum up. Yeah, please do. We've taken you over. Am I over, Your Honor? Yeah. The clock's now counting up. Even if you were to get past the lack of custody issue, the government contends that there are not extreme circumstances here. There's no claim of United States citizenship made, as there was in – That's okay. No, we understand. There's no claim of citizenship. There's no claim of citizenship made. There's no claim that there was a lack of counsel. There's no claim that there was a lack of right to access to files. There's no argument, as there was in Sink, that I was removed and now here I am contesting a removal order from abroad and I'm not even sure how I got here. There's extreme circumstances don't apply here, Your Honors, and the government would argue that there's no immigration jurisdiction on that, habeas jurisdiction on that basis.  Would you concede that these are unusual circumstances? They're certainly unusual circumstances. They are, Your Honor. Okay. Thank you. Thank you, Your Honors. Thank you very much. You've saved some time. And I believe that the government has answered Judge Christian's question regarding the citation to the record?  Thank you. And as the Court indicated, the circumstances in this case are unusual and they justify habeas jurisdiction and relief. The government offers to parole Desiree and bring him back into the country under the circumstances that he could be paroled for a very short period and then incarcerated in Eloy detention facilities shortly thereafter. Desiree's circumstances are similar to Hensley v. Municipal Court, where the Supreme Court held that a convict released on his own recognizance satisfied habeas custody's requirement. The Court reasoned that the convict's freedom of movement was restricted by the state and that the state had indicated its determination to put him behind bars after a stay of execution on his sentence. Similarly, the Attorney General will take Desiree into custody as soon as he enters the country or his parole period is complete. And so Desiree is under an unexecuted order of detention, just as the Hensley petitioner was under an unexecuted sentence. He meets the requirement of custody if you think about custody as more than physical confinement in this country currently, which is what Ninth Circuit precedent and United States precedent requires the Court to do. As for the res judicata argument, the Court has seized on the crucial distinction that reopening a case can be sought on new facts and new evidence if the proceeding is ongoing and has not been terminated. That's not the situation we have here. It doesn't have to be facts and evidence that couldn't have been made available earlier? Yes. It has to be new facts, new evidence that were not available earlier. And a change in law, Bravo-Perdosa establishes that a change in law is not such that that would be a new fact or new evidence that could be admitted under those circumstances and justify the government getting the opportunity to present those charges again when they had the opportunity to do so. So the policies behind res judicata are clearly implicated here. This is a civil proceeding, and res judicata allows litigants to not be continually having to defend themselves in successive proceedings, and it also aims to conserve judicial resources. Neither of those things happened here. Desiree was incarcerated for seven years. Then his removal order was vacated. When he tries to come back into the country, he's prevented from doing so because there's essentially a successive deportation proceeding brought against him for the same charge. And we're having to use the judicial resources to seek behaviorist relief that he's entitled to. He's not currently under a detention order that or removal order, excuse me, that's valid, and he should be permitted to be back into the country. But the government refuses to let go of the fact that it failed to bring the charges it should have brought in the first place. And if we look at Bravo-Pedrosa, if we look at Ramon Sepulveda, if we look at Al Mutareb, we clearly have the precedent in this case that demands that on the merits, his res judicata argument should prevail and that his petition should be granted. And we also submit to the Court that he meets the in-custody requirement because it is a very complicated analysis. It is a very unusual situation. But there can be no denying that he is subject to restraints on his liberty that are not, you know, for the public at large, and that he will be in custody and in Eloy Detention Center as Eloy Detention Facility as soon as he enters this country. Okay. Thank you very much. Let me ask one question unrelated to the merits of this case, and that is, was your firm appointed pursuant to our pro bono immigration case policy? Yes. Okay. So I would like to say I always say this in such cases. In fact, we always say this, that we're very grateful to firms that do donate their time and their expertise in such cases. They're very useful to us. I say this win or lose. Thank you very much. Okay. The case of Desiree v. Holder is now submitted for decision. Thank you. Thank you. Thank you. All right. Mr. Ward, for this session, it stands adjourned.
judges: Fletcher, Gould, Christen